UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:  Chapter 7

Michael George Hermoyian,  Case No. 10-44423

Debtor.  Hon. Phillip J. Shefferly
_____/

**OPINION DENYING DEBTOR'S MOTION TO
ALTER OR AMEND ORDER AND MOTION FOR RECONSIDERATION**

## Introduction

On July 13, 2010, the Court entered an order granting John Tweedie's motion for relief from the automatic stay. On July 27, 2010, the Debtor filed a motion for reconsideration of that order. For the reasons set forth in this opinion, the Court has determined to deny the motion.

## Facts

On February 16, 2010, the Debtor filed this Chapter 7 case. The initial § 341 meeting was held on March 24, 2010, and the Chapter 7 Trustee filed a no asset report on May 21, 2010. On May 21, 2010, Tweedie, a creditor, filed an adversary proceeding seeking a determination of the non-dischargeability of a debt allegedly owed to him by the Debtor under §§ 523(a)(2), (4), and (6) of the Bankruptcy Code. The complaint also requested the denial of the Debtor's discharge under § 727 of the Bankruptcy Code.

On June 17, 2010, Tweedie filed a motion for relief from the automatic stay.[1] The motion alleged that Tweedie and the Debtor were parties to a lawsuit that was commenced in Antrim County Circuit Court on January 16, 2009 ("State Court Lawsuit"). The State Court Lawsuit pertains to various disputes between the Debtor and Tweedie arising out of loans made by Tweedie to the Debtor and various business entities as well as other business transactions between them. The business relationship extended over a lengthy period of time and involved multiple corporate entities. The motion also alleged that on January 20, 2010, just five days before the State Court Lawsuit was scheduled for a jury trial, Tweedie and the Debtor stipulated to the entry of an order providing that their disputes in the State Court Lawsuit be submitted to binding arbitration. The motion further alleged that on January 29, 2010, pursuant to the terms of the stipulated order, Tweedie and the Debtor selected William E. Clark as the arbitrator, and agreed upon a schedule and a location for the arbitration to commence March 15, 2010. The motion stated that there were a number of other co-defendants along with the Debtor in the State Court Lawsuit, including certain entities owned or controlled by the Debtor, AIM Vending & Coffee Service, AIM Breeze Freeze LLC, Tropical Breeze Inc., and Cool Breeze Enterprises Ltd. ("Corporate Defendants"), as well as the Debtor's girlfriend, Betty Semeniuk. The motion further alleged that the arbitration did not go forward as to the Debtor and Semeniuk because they each filed individual Chapter 7 bankruptcy petitions on February 16, 2010. The arbitration proceeding did go forward with respect to the Corporate Defendants for approximately 4-1/2 days until March 23, 2010, when each of the

---

[1] This was Tweedie's second motion for relief from the automatic stay. Tweedie had previously filed an "emergency" motion for relief from the automatic stay on March 1, 2010, that the Court denied on March 23, 2010.

Corporate Defendants filed their own Chapter 7 bankruptcy cases just before the arbitration was scheduled to conclude. The motion sought an order lifting the automatic stay under § 362(d)(1) of the Bankruptcy Code so that Tweedie could proceed to arbitrate his claims against the Debtor under the arbitration order entered by the Antrim County Circuit Court on January 20, 2010.

The Debtor responded to Tweedie's motion, and the Court held a hearing on July 12, 2010. At that hearing, the Court determined that there was cause to lift the automatic stay under § 362(d)(1) of the Bankruptcy Code to permit Tweedie to proceed with the arbitration of his claims against the Debtor. The Court noted that judicial economy would be promoted by going forward with the arbitration to determine whether there was a debt owing at all by the Debtor to Tweedie and, if so, the amount of that debt. If the arbitration resulted in an award in favor of Tweedie and against the Debtor, then the Bankruptcy Court would later determine in the adversary proceeding whether such debt was non-dischargeable under §§ 523(a)(2), (4), or (6) of the Bankruptcy Code, as alleged in Tweedie's complaint. On the other hand, if the arbitrator did not make an award against the Debtor and in favor of Tweedie, then there would be nothing for this Court to determine in the adversary proceeding brought by Tweedie under §§ 523 and 727 of the Bankruptcy Code. The Court also observed that this is a no asset Chapter 7 case and, therefore, the rights of other creditors would not be prejudiced by the arbitration proceeding going forward. The Court also made it clear that any award by the arbitrator in favor of Tweedie and against the Debtor could not be enforced absent further order of the Bankruptcy Court. In rendering its decision, the Court explained that there is a strong federal policy favoring arbitration of disputes, and that the parties in this case had agreed in the stipulated order entered by the Antrim County Circuit Court to arbitrate the

disputes between them.  It also appeared to the Court that the arbitration could be conducted promptly and, based upon the estimates of the attorneys at the hearing, would take no more than 1-1/2 or 2 days.  The Court did not find that there was any harm that would be caused to the Debtor by having to arbitrate.  After considering all of the facts brought to the Court's attention, the Court determined that there was sufficient cause to lift the stay to allow the arbitration to go forward.  On July 13, 2010, the Court entered an order granting Tweedie's motion.

The Debtor's motion for reconsideration is brought pursuant to L.B.R. 9024-1(a).  The Debtor asserts that there was a palpable defect in the Court's ruling granting Tweedie's motion for relief from the automatic stay.  Specifically, the motion argues that because the arbitrator is not required to make findings of fact or conclusions of law, judicial economy may not be promoted by allowing the arbitration to go forward, because the Bankruptcy Court may ultimately be required to hear testimony and other evidence at a later date to determine whether any award rendered by the arbitrator is nondischargeable.  The motion for reconsideration also argues that the estimates provided to the Court at the hearing on July 12, 2010 about the length of the arbitration were erroneous.  Attached to the motion is a copy of a July 23, 2010 letter from William E. Clark, the arbitrator, in which he sets forth a schedule for the arbitration commencing on August 30, 2010 and continuing through September 3, 2010, with additional time, if necessary, scheduled to begin on September 13, 2010 and continuing through September 16, 2010.  The motion for reconsideration points out that this schedule demonstrates that the arbitration will last much longer and be much more burdensome on the Debtor than may have been thought by the Court at the July 12, 2010 hearing.  Next, the motion for reconsideration argues that allowing the arbitration to go forward

-4-

contravenes the policy of the Bankruptcy Code to provide an individual debtor with a fresh start, because the Debtor will be burdened by the costs of the arbitration. William E. Clark's letter explains that his hourly charge is $150.00, and requests a $2,000.00 deposit before the arbitration commences. The motion for reconsideration alleges that the Debtor does not have the ability to pay the arbitrator's fees and costs and, further, because the location of the arbitration is in Traverse City, the Debtor will be required to incur additional burdensome expenses for his travel and lodging, as well as making arrangements for the care of his elderly mother during his absence while at the arbitration proceeding. Finally, the motion for reconsideration asserts that the arbitration should not go forward because of a pending motion regarding the sale or other disposition of assets in the Tropical Breeze Inc. Chapter 7 bankruptcy case no. 10-49279.

Tweedie filed a response to the motion for reconsideration arguing that the Debtor has not demonstrated any palpable defect in the Court's ruling granting the motion for relief from the automatic stay. Tweedie points out that the Debtor's motion for reconsideration does not present any new facts, nor does it identify any issue that the Court has not either expressly or by reasonable implication already considered in its ruling on July 12, 2010.

The Court was sufficiently concerned about the content of the arbitrator's letter that the Court determined to schedule the Debtor's motion for reconsideration for hearing on August 16, 2010. At the hearing, the Debtor informed the Court that about two hours before the hearing, the Debtor filed an affidavit of facts in support of the motion for reconsideration. Because the affidavit was filed just prior to the hearing, neither the Court nor Tweedie had a prior opportunity to review

it.[2] However, Debtor's counsel summarized the facts for the Court that were set forth in the affidavit. Most of those facts relate to the hardship that the Debtor believes will be imposed upon him if the arbitration is permitted to go forward. The Debtor's counsel emphasized the expense that the arbitration imposes, but also pointed out that the schedule set forth by the arbitrator is an unreasonably accelerated schedule, and the Debtor's counsel expressed his concern that the arbitrator may not be impartial because of the Debtor's alleged inability to pay the arbitrator's fees.

For his part, Tweedie not only disputed those facts, but also made a new legal argument that was not previously covered in either the motion for relief from the automatic stay or Tweedie's response to the motion for reconsideration. Specifically, Tweedie argued at the hearing that the federal policy favoring arbitration does not permit this Court *any* discretion to refuse to enforce a pre-petition arbitration agreement. Both the Debtor and Tweedie supplied the Court during the hearing with new citations to authority that were not previously identified in either of their written papers filed with the Court. At the conclusion of the August 16, 2010 hearing, the Court determined to take the matter under advisement, in part so that the Court would have the opportunity to review the new authorities that were identified on the record both by the Debtor and by Tweedie. The Court has now had the opportunity to do that.

## **Discussion**

The first issue before the Court concerns the procedure for the Debtor's motion for reconsideration. Local Bankruptcy Rule 9024-1(a)(3) provides as follows:

---

[2] The affidavit was later stricken by order of the Court on August 17, 2010 because it was filed with the incorrect event code.

-6-

> **Grounds.** Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

This local rule makes it clear that ordinarily motions for reconsideration that merely present the same issues already ruled upon by the Court, either expressly or impliedly, will not be granted. However, the rule is equally clear that it does not restrict the discretion of the Court in reconsidering rulings that it has made. The local rule permits the Court discretion to consider the Debtor's motion for reconsideration even if the Debtor does not demonstrate a palpable defect in the Court's ruling.

The decision made by the Court to grant the motion for relief from the automatic stay was made under § 362(d)(1) of the Bankruptcy Code. That section of the Bankruptcy Code provides that relief from the automatic stay shall be granted upon a demonstration of cause. "Cause" is not defined in the Bankruptcy Code. There is no bright-line test for cause that applies in each and every case. "As used in § 362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." Chrysler LLC v. Plastech Engineered Products, Inc. (In re Plastech Engineered Products, Inc.), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (citations and internal quotation marks omitted).

In this case, when making its ruling on July 12, 2010, the Court considered a number of facts that the parties argued were relevant in this case in determining whether cause exists to lift the automatic stay to allow the arbitration to continue. After weighing all of those facts, the Court determined that there was sufficient cause to grant relief from the automatic stay. Those facts have

-7-

10-44423-pjs    Doc 75    Filed 08/24/10    Entered 08/25/10 06:40:06    Page 7 of 18

not changed. The Debtor's motion does not demonstrate a palpable defect by which the Court and the parties were misled, the correction of which would produce a different result.

However, the July 23, 2010 letter from the arbitrator, William E. Clark, that was attached to the Debtor's motion for reconsideration, does provide the Court with some new facts that were not part of the record on July 12, 2010, when the Court made its ruling granting Tweedie's motion for relief from the automatic stay. Further, as noted earlier, both Tweedie and the Debtor cited the Court to new authorities at the hearing on the motion for reconsideration. Because (i) the Court has the discretion to reconsider its ruling under L.B.R. 9024-1; (ii) there are some new facts that have been brought to the Court's attention in the Debtor's motion for reconsideration; and (iii) both the Debtor and Tweedie made new legal arguments at the hearing on August 16, 2010, the Court will examine these new factual issues and new legal issues raised by the parties.

The new facts raised by the Debtor's motion for reconsideration go largely to the expenses that the Debtor will incur if he is forced to go forward with the arbitration, and the hardship that might be imposed upon the Debtor's attorney by having to participate in the arbitration on such an accelerated schedule. Those are certainly valid considerations, because one factor that a bankruptcy court may weigh in determining whether cause exists to lift the automatic stay is the balance of harm to the parties. In a Chapter 7 individual debtor case, the cost of arbitration is real, and can be a substantial burden. For the first time, the Court now has information regarding the actual fees and costs that will be incurred in the arbitration in this case. According to William E. Clark's letter, he will charge $150.00 per hour for the arbitration, and he has already set aside five full days for the arbitration. The arbitrator's fees alone, then, may exceed $1,000.00 per day for the five days

set aside by the arbitrator, without regard to the legal fees that will be incurred by the Debtor in the arbitration. That is a substantial cost to the Debtor. Further, the arbitrator is insisting upon a $2,000.00 deposit by the parties prior to the commencement of the arbitration. The Debtor's motion for reconsideration does provide the Court with new facts regarding the costs that will be incurred by the Debtor if the arbitration goes forward.

In addition, the Court now has more information regarding the possible length of this arbitration than was presented at the July 12, 2010 hearing. At that hearing, Tweedie estimated that it would be 1-1/2 to 2 days for the arbitration. However, William E. Clark's letter makes it clear that he has set aside an initial five full days, plus another four days, and will reserve even more time if necessary. Applying the hourly rates identified in William E. Clark's letter to an arbitration that now appears will take numerous days to conclude, demonstrates that the arbitration fees may impose a very substantial burden on the Debtor. Although the Court was aware at the July 12, 2010 hearing that there would be a cost to the Debtor for the arbitration, the Court now has much more detailed information about the potential amount of these costs, and it is significant. This fact is one that goes directly to the balance of harm that the Court weighed at the July 12, 2010 hearing, and arguably supports the Debtor's assertion that the Court should reconsider its finding that cause exists to lift the automatic stay to let the arbitration go forward.

As noted earlier, both the Debtor and Tweedie also made new legal arguments at the August 16, 2010 hearing on the Debtor's motion for reconsideration. Each of them focused on cases that have addressed whether the stay should be lifted in the specific context of enforcing a pre-petition agreement to *arbitrate*, as opposed to the cases they relied on at the original hearing,

which primarily addressed whether to lift the stay to continue *judicial* proceedings commenced pre-petition. Both the Debtor and Tweedie agree that the case law is well settled where the arbitration pertains to a non-core matter. A bankruptcy court has *no* discretion, and is required to allow arbitrations to go forward with respect to non-core matters. See, e.g., MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006) (noting that "the presumption in favor of arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings"). However, the Debtor argues that the adjudication of a debt owing by him to Tweedie for purposes of a § 523 nondischargeability action is a core proceeding and, therefore, the Bankruptcy Court is not required to allow the arbitration proceeding to go forward. See Cuvrell v. Mazur (In re F & T Contractors, Inc.), 649 F.2d 1229, 1232 (6th Cir. 1981) (addressing a core proceeding that "would affect the amount, existence and priority of claims to be paid out of the general funds and, thus, involve the interests of other creditors" and finding no abuse of discretion when the bankruptcy court refused to compel arbitration) (citations omitted). Tweedie, on the other hand, now argues that even if the determination of the existence of a debt and the amount of that debt is a core proceeding, nonetheless the Court still has no discretion, and is required to allow the arbitration proceeding to go forward.

The Court has had the opportunity to review the cases cited by both the Debtor and Tweedie, as well as to conduct its own research. Although there is no controlling Sixth Circuit law, there are a number of instructive cases from other courts that have addressed this issue. As a starting point, there is a "'liberal federal policy favoring arbitration'" that requires "courts to 'rigorously enforce agreements to arbitrate.'" Unsecured Creditors' Committee v. Hyundai Motor Co. (In re Dollar

Corp.), 139 B.R. 192, 194 (Bankr. E.D. Mich. 1992) (quoting Moses H. Cohn Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983) and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)). "[P]rivate parties who contract for arbitration, as a more efficient method of dispute resolution, shall not have their bargains frustrated." Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1160 (3d Cir. 1989) (footnote and citation omitted). "A court has a duty to stay its proceedings if it is satisfied that the issue before it is arbitrable, and '[t]his duty . . . is not diminished when a party bound by an agreement raises a claim founded on statutory rights.'" MBNA America Bank, N.A. v. Hill, 436 F.3d at 108 (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)).

> However, as the Supreme Court acknowledged in McMahon, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." The party opposing arbitration has the burden of showing that Congress intended to preclude arbitration of the statutory rights at issue. Congressional intent can be deduced from the statute's text or legislative history, or from "an inherent conflict between arbitration and the statute's underlying purposes."
>
> Disputes that involve both the Bankruptcy Code and the Arbitration Act often present conflicts of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution.
>
> In resolving these conflicts, courts distinguish between claims over which bankruptcy judges have discretion to refuse arbitration and those that they must send directly to arbitration. Bankruptcy courts generally do not have discretion to refuse to compel arbitration of "non-core" bankruptcy matters, or matters that are simply "related to" bankruptcy cases. As to these matters, the presumption in favor of arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings.
>
> Bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate more pressing bankruptcy concerns. However, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are

-11-

based on provisions of the Bankruptcy Code that "inherently conflict" with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code. This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.

MBNA v. Hill, 436 F.3d at 108 (quoting McMahon, 482 U.S. at 227) (other internal quotation marks and citations omitted).[3]

The Court in this case must first determine whether the matter to be arbitrated is a core proceeding. The scope of the Antrim County Circuit Court's order compelling arbitration is extensive. But the only matters that are covered by this Court's order lifting the stay are the determination of whether Debtor is liable to Tweedie, and, if so, the determination of the amount of that liability. The determination of a debt owed by the debtor to a creditor, whether for purposes of claims resolution in the bankruptcy estate, or for purposes of determining non-dischargeability under § 523 of the Bankruptcy Code is a core proceeding. 28 U.S.C. § 157(b)(2)(B) and (I). Because a determination of a debt owing by the Debtor to Tweedie and the liquidation of the amount

---

[3] The MBNA v. Hill case was decided under the Federal Arbitration Act, 9 U.S.C. § 1, et seq., which embodies "a national policy favoring arbitration of claims that parties contract to settle in that manner." Preston v. Ferrer, 552 U.S. 346, 353 (2008) (internal quotation marks and citation omitted). "That national policy . . . appli[es] in state as well as federal courts and foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." Id. Although the parties did not cite to the FAA, the enforcement of their agreement to arbitrate, as reflected in the state court order, is governed by the same national policy.

-12-

of that debt is a core proceeding, the Court next must determine whether there is an "inherent conflict" between arbitration in this case and the Bankruptcy Code's underlying purposes.

As noted, the Chapter 7 Trustee filed a no asset report on May 21, 2010. Therefore, there is no conflict with the Bankruptcy Code's underlying policy of a centralized forum for claims resolution and orderly distribution of assets because there are no claims to be resolved nor assets to be distributed in this Chapter 7 case.

Nonetheless, the Debtor argues that there is an inherent conflict in this instance, because the debt that is the subject of the arbitration proceeding is also the subject of a non-dischargeability proceeding. Holland v. Zimmerman (In re Zimmerman), 341 B.R. 77 (Bankr. N.D. Ga. 2006), has a similar fact pattern. The initial adversary complaint alleged non-dischargeability under §§ 523(a)(2), (4) and (6) based on investor claims for misrepresentation and fraud. The investors moved to lift the automatic stay to permit them to complete arbitration. Id. at 78. The court initially took the matter under advisement, but expressed its inclination to deny the motion for relief from the automatic stay. Id. at 79. The court explained that, as a general rule, the

> determination of dischargeability of a debt is a core proceeding that is of critical importance to the "fresh start" that the Bankruptcy Code promises to the honest but unfortunate debtor. That promise is impaired if a bankruptcy court sends a debtor to another forum to obtain rights that the Bankruptcy Code confers. . . .
>
> Because the discharge is a critical, if not the central, objective of an individual's bankruptcy filing, arbitration of issues relating to dischargeability inherently conflicts with bankruptcy law that expressly provides for, and in some instances requires, the bankruptcy courts to make dischargeability determinations and necessarily jeopardizes the Debtor's interests in having dischargeability and other issues relating to the "fresh start" determined in one forum with particularized expertise to do so. Under these principles, a bankruptcy court ordinarily should decline to relinquish its jurisdiction over dischargeability issues and should deny a request to modify the stay to permit arbitration to proceed.

-13-

Id. at 79-80.

However, during the time that the matter was under advisement before the Zimmerman court, the investors amended their complaint to also assert that their debt may be nondischargeable under § 523(a)(19) of the Bankruptcy Code. Section 523(a)(19) "expressly contemplates a post-petition determination of liability by a nonbankruptcy forum" for the debts at issue. Id. at 80. Despite the court's original inclination to deny the motion for relief from the automatic stay, the court ultimately determined that because of the § 523(a)(19) claim, it should exercise its discretion to allow the arbitration proceeding to go forward. In the interest of judicial economy and having the matter proceed in one forum, the court granted the motion as to all claims, including those under §§ 523(a)(2), (4) and (6). Id. at 81.

The Court agrees with the Zimmerman court that the prompt determination of a debtor's entitlement to a discharge is a crucial concern underlying bankruptcy policy. The Court's July 13, 2010 order lifting the stay respected that policy by limiting the issues to be arbitrated to the determination of the Debtor's liability to Tweedie and the amount of that liability, if any. There is nothing uncommon about having the existence of a debt and the amount of that debt determined by some forum other than the Bankruptcy Court, leaving the Bankruptcy Court to determine whether any such debt is dischargeable or not under § 523 of the Bankruptcy Code. In fact, the accelerated schedule set out by the arbitrator will further the policy of a prompt adjudication in this case. The arbitrator, according to his letter, will make this threshold determination far sooner than the Bankruptcy Court will have done. Presently there is no schedule in the adversary proceeding, and the initial scheduling conference is not set to be held until September 24, 2010. It appears by any

-14-

estimate that the arbitration proceeding regarding the determination of the debt and the liquidation of the amount of the debt will be concluded long before this Court could try the § 523 action. And if the arbitrator does not render an award in favor of Tweedie, then the § 523 and § 727 proceedings before this Court come to an end. There will be nothing for this Court to adjudicate. The Court finds that there is no inherent conflict between arbitration of the limited matters regarding the existence and amount of a debt, and the underlying policy of the Bankruptcy Code to promptly adjudicate the dischargeability of such debt.

The Debtor argues that arbitration will impede his "fresh start" because arbitration will impose a substantial economic burden on him. The arbitration fees may be substantial. Then again, they may not. There is no reason to doubt the Debtor's contention that traveling to Traverse City for the arbitration will add to the cost. But these are costs that were known to the Debtor at the time he and Tweedie bargained for and agreed to arbitration as they faced the costs of the impending jury trial. The Debtor and Tweedie entered into a pre-petition arbitration agreement to resolve the disputes between them. This agreement is memorialized in a court order compelling arbitration. The Debtor agreed to William E. Clark serving as the arbitrator and agreed to have the arbitration conducted in Traverse City. The Debtor also agreed to a schedule for arbitration, which was to have commenced March 15, 2010. Presumably, the Debtor knew that there was a cost to arbitration, and he weighed that cost when he bargained for and agreed to arbitrate his disputes with Tweedie less than a month before filing his Chapter 7 petition. The Debtor is correct in stating that he is entitled to a fresh start. But the Debtor reads fresh start too broadly. A fresh start does not mean debtors are free from all of the consequences of every decision that they have made, which in hindsight,

might have been ill-advised. Instead, the honest but unfortunate debtor is given a fresh start through a discharge of debts. Tweedie, as is his right, has challenged the Debtor's discharge and the dischargeability of an alleged debt. It may or may not cost more for an arbitrator to determine the limited issues of the fact and amount of the debt than if this Court made that determination. But this fact does not impair the Debtor's fresh start nor does it give the Court a basis to conclude that arbitration in this case inherently conflicts with an underlying policy of the Bankruptcy Code.[4]

## **Conclusion**

To recap, the Court concludes that it does have the discretion to reconsider its ruling granting the motion for relief from the automatic stay under L.B.R. 9024-1. Having now done so, however, the Court concludes that its ruling was correct. The Debtor has not demonstrated a palpable defect in the Court's decision to lift the automatic stay to let the arbitration proceeding go forward. Nor do the new facts that were brought to the Court's attention in the motion for reconsideration persuade the Court to exercise its discretion under L.B.R. 9024-1 to change its ruling. As for the legal authorities that the parties first cited at the August 16, 2010 hearing, they support, rather than

---

[4] The Debtor's motion for reconsideration asserts a third argument – that the arbitration should not go forward because of a pending motion regarding the sale or other disposition of assets in the Chapter 7 case of a related corporate entity, Tropical Breeze Inc. This argument is difficult to understand. There is no trustee motion for turnover pending in the Tropical Breeze case. Instead, Tweedie has filed an adversary complaint (no. 10-5893) in that case, in which he asserts an interest in the assets of that estate. The Debtor argues that his liability to Tweedie is subject to the resolution of Tweedie's interest in the Tropical Breeze assets. However, a recovery by Tweedie against the assets of a related corporate debtor would only act to offset any debt that the Debtor owes to Tweedie. There is nothing in Tweedie's adversary proceeding against the Chapter 7 trustee that presents an inherent conflict between arbitration of the fact and amount of the debt owed by the Debtor to Tweedie and any underlying purpose in the Bankruptcy Code.

-16-

contradict, the Court's decision to lift the automatic stay in these circumstances. The Court will therefore deny the Debtor's motion for reconsideration to the extent that it seeks to alter or amend that order. However, in the interest of clarity, the Court will enter its own order denying the motion for reconsideration that explains to the arbitrator and the parties that the automatic stay has been lifted only for the limited purpose of allowing the arbitrator to make determinations of the fact of liability and the amount of liability of any debt owed by the Debtor to Tweedie. All issues relating to the determination of whether any such award is nondischargeable under § 523 of the Bankruptcy Code are solely within the jurisdiction of this Court, and the Court's decision to lift the automatic stay does not somehow permit the arbitrator to determine whether any such debt is nondischargeable.

Further, as noted earlier, because this is an individual debtor in a Chapter 7 case, the Court shares the Debtor's concern about the accelerated schedule for arbitration and the costs that may be imposed upon the Debtor. While the Court has determined to lift the automatic stay and deny the motion for reconsideration, the Court nonetheless encourages the Debtor and Tweedie to reach a mutually acceptable schedule with the arbitrator that does not unnecessarily burden any of the parties or their attorneys in the arbitration of the liability, if any, of the Debtor to Tweedie. If such agreement cannot be reached, then the Court considers the proper forum for any request for relief from that schedule to be with the arbitrator, and not with this Court. The Court will enter its own order consistent with this opinion denying the motion for reconsideration and clarifying the order granting relief from the automatic stay.

**For publication**

**Signed on August 24, 2010**

                                                /s/ Phillip J. Shefferly
                                                Phillip J. Shefferly
                                                United States Bankruptcy Judge

-18-